A. GLENDON JOHNSON v. WILLIAM HARVEY HOOKS, JR., AND WACHOVIA BANK AND TRUST COMPANY OF GOLDSBORO

No. 6910DC406

(Filed 22 October 1969)

Banks and Banking § 11— loan transaction — agreement between plaintiff and bank — forwarding of debtor's note — allegations

Where plaintiff alleged that he volunteered to advance the defendant bank the amount owing defendant by a third person on an automobile loan and that he authorized the defendant to draw a sight draft on the plaintiff's account in another bank and instructed defendant to attach the loan papers to the draft, and where the draft was accepted and paid either by plaintiff personally or by plaintiff's bank in consideration of delivery to plaintiff of the certificate of title to the automobile, the unconditional acceptance and payment of the draft concluded the transaction between plaintiff and defendant, and plaintiff may not thereafter recover from defendant upon allegations that defendant failed to attach the note of the third person to the draft.

APPEAL by plaintiff from *Ransdell, District Judge,* 6 May 1969 Session, WAKE County District Court.

Plaintiff filed complaint reading as follows:

"1.  That the Plaintiff is a citizen of Wake County, William Harvey Hooks, Jr., is a citizen of Wayne County, and The Wachovia Bank & Trust Co. is a corporation created by the Laws of North Carolina, with one of its principal offices in Goldsboro, Wayne County.

"2.  That on or about the 25th of February, 1965, William

Harvey Hooks, Jr., became indebted to the Wachovia Bank of Goldsboro in the amount of $1,621.19 through a negotiable Note made payable to said Bank (or to a Fremont Motor Sales which in turn sold or endorsed the said Note to the Wachovia) on the purchase of an automobile for William Harvey Hooks, Jr.'s minor son, William Harvey Hooks, III.

"3. That the son, William Harvey Hooks, III, suggested difficulties in meeting the payment on said Note, and when the Assistant Cashier of the Wachovia in Goldsboro in charge of auto loans explained his inability to accept either installment payments or an extension of time on the payment of the Note for an extra endorsement, the Plaintiff volunteered to advance the money necessary to take the account off the hands of the Wachovia.

"4. That it was impractical to personally pick up the said Note and pertinent papers involved, but the Plaintiff authorized the Wachovia to draw a sight draft on the Plaintiff in care of the Bank of Fuquay and instructed the Wachovia to attach their loan papers to the draft.

"5. That said Draft was paid by the Bank of Fuquay, and the amount of $1,621.19 deducted from the account of Plaintiff on or about March 3, 1966; but the Wachovia had attached to said Draft only the minor son's Motor Vehicles Certificate of Title with the registered lien thereon endorsed as 'Released', — instead of assigned to the Plaintiff; the existing insurance policy was not assigned or attached; and the Note for which the Draft was issued and honored was neither enclosed nor subsequently supplied to the Plaintiff.

"6. That about 6 weeks after the payment of said Draft to the Wachovia the car in question was wrecked; Plaintiff then determined that William Harvey Hooks, III, was still a minor; and that the insurance on said car had been allowed to lapse.

"7. That in pursuit of the lapsed insurance angle, or responsibility therefor, the Plaintiff became aware of the fact that the Note which had been actually credited was that of William Harvey Hooks, Jr., (the father), who was unknown to the Plaintiff, and whose Note the Wachovia marked 'Paid' and returned direct to the defendant Hooks from the Wachovia's central office or vaults in Winston-Salem, N. C., — but which should have been assigned and mailed to the Plaintiff herein, as part of the valuable consideration for the Draft.

"8. That the Plaintiff made known to both the defendants William Harvey Hooks, Jr., and the Wachovia the clerical mistakes of marking said Note 'Paid' and forwarding the same to the defendant Hooks; but the Wachovia protested its 'custom' of handling all such Notes when 'Paid', and the Father refused to accept any responsibility or liability for the money actually advanced for the benefit of his minor son, on the Father's Note, or to return the Note in question to the Plaintiff, as would have been properly due, where no obligation existed between the Plaintiff and Defendants.

"9. That through the Wachovia's mistakes of handling the papers in question and the refusal of the defendant Hooks to deliver to Plaintiff the Note which was inadvertently marked 'Paid' and wrongfully delivered to its maker, the Wachovia enabled defendant Hooks to enrich himself in the amount of said Note, $1,621.19, at the expense of Plaintiff.

"10. That by reason of the wrongful handling of said Draft, the Defendants herein caused the Bank of Fuquay to erroneously deduct from the Plaintiff's bank account the sum of $1,621.19 and appropriate said amount to the Wachovia Bank of Goldsboro, and which amount they now hold and have held since March 3, 1966, without delivering the aforesaid chattel Note, for which their Draft was honored; and that the defendant Wachovia is justly due this Plaintiff $1,621.19, which moneys they wrongfully collected; and which they still continue to refuse to return to the Plaintiff."

Wachovia Bank and Trust Company of Goldsboro demurred to the complaint for failure to allege a cause of action against it. The demurrer was sustained, and plaintiff appealed.

*A. Glendon Johnson, pro se.*

*Taylor, Allen, Warren & Kerr, by John H. Kerr, III, for Wachovia Bank and Trust Company of Goldsboro.*

BROCK, J.

Plaintiff does not allege a contract with Wachovia. He alleges ". . . Plaintiff volunteered to advance the money necessary to take the account off the hands of Wachovia." He further alleges ". . . Plaintiff authorized the Wachovia to draw a sight draft on the Plaintiff in care of the Bank of Fuquay and instructed the Wachovia to attach their loan papers to the draft." Just what was

meant by "their loan papers" is not clear. In any event, it is clear from the complaint that either the plaintiff accepted and paid the draft as it was drawn, or the Bank of Fuquay, acting as plaintiff's agent, accepted and paid the draft as drawn. If plaintiff personally accepted and paid the draft, he did so charged with knowledge that only the title certificate for the automobile was attached. If the Bank of Fuquay, acting as plaintiff's agent, accepted the draft, it did so charged with knowledge that only the title certificate for the automobile was attached. In either event the draft was accepted and the face amount thereof paid to Wachovia in consideration of delivery to plaintiff of the certificate of title for the automobile. If the Bank of Fuquay acted as agent for plaintiff, it is clear that either plaintiff failed to instruct the Bank of Fuquay upon what conditions it was to accept and pay the draft, or the Bank of Fuquay failed to follow plaintiff's instructions. There is no allegation of a promise on the part of Wachovia to deliver additional particular "papers," after acceptance of the draft, nor is there allegation of mutual mistake or fraud in the drawing and acceptance of the draft; therefore, the unconditional acceptance and payment of the draft on or about 3 March 1966 concluded the transaction between plaintiff and Wachovia.

The judgment of the District Court sustaining Wachovia's demurrer to the complaint is

Affirmed.

BRITT and VAUGHN, JJ., concur.